AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>Luxury items (See Attachment A) | )<br>)<br>)  Case No. 1:23-mc-00086-SBP<br>)<br>) |

**APPLICATION FOR A WARRANT
TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ___Colorado___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § 981(a)(1)(C)  *(describe the property)*:

Luxury items (See Attachment A )

The application is based on these facts:

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached affidavit which is continued on the attached sheet and made a part hereof.

☑ Continued on the attached sheet.

s/Christine Norman
*Applicant's signature*

Christine Norman, SA Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and: ☐ signed in my presence. ☐ submitted, attested to, and acknowledged by reliable electronic means.

Date: September 18, 2023

*Judge's signature*

City and state: Denver, Colorado

Susan B. Prose, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

## INTRODUCTION AND AGENT BACKGROUND

I, Christine Norman, being duly sworn, depose and state the following is true to the best of my information, knowledge, and belief:

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2022 and have been assigned to the FBI's Denver Field Office White-Collar Crime Squad, where I investigate violations of federal law relating to various white-collar crimes including money laundering, bank/mail/wire fraud, and securities fraud. Since becoming an FBI Agent, I have received specialized and on the job training regarding a variety of criminal activities including various types of fraud. I have also received training in seizure warrant applications and the execution of searches and seizures. Prior to becoming a special agent, I worked for the FBI as a Forensic Accountant for three years, assisting in numerous criminal investigations related to white-collar, cyber, and national security matters. Prior to my employment with the FBI, I spent six years working in the Forensic practice at a public accounting firm assisting on financial statement investigations, regulatory compliance matters, and financial statement audits.

## PURPOSE OF AFFIDAVIT

2. This affidavit is presented in support of an application for Seizure Warrants to seize the following vehicle and luxury items purchased from Neiman Marcus:

    a. 2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317

    b. Item #HBPF8, Gold Crystal Drip Floor Lamp

1

      c. Yves Saint Laurent Black Puffer Small Pouch Agneau Plume Matela Shoulder Bag

      d. Chanel Blackgrey Shield Sunglasses

      e. Chanel White CC Rivera Cat Eye Sunglasses

      f. Chanel Black Timeless Classic Medium Flapbag Caviar

      g. Chanel Beige Clair Timeless Classic Cardholder Caviar

      h. Chanel White Vanity Case Shoulder Bag

      i. Chanel Black Bucket Bag

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested seizure warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

4. Based on my training, experience, and the facts set forth in this affidavit, your Affiant submits that there is probable cause to believe that the above listed assets were purchased by Tiffany Vo with proceeds of the fraud directly traceable from her fraudulent activity outlined below. Therefore, the above listed assets are subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and (b) as property which was derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud).

**PROBABLE CAUSE IN SUPPORT OF SEIZURE WARRANT**

Amazon Background[1]

5.  Amazon is a global retailer headquartered in Seattle, Washington. At Amazon, the Global Learning & Development team runs an Executive Development program dedicated to onboarding senior-level employees.

6.  Amazon's onboarding program for executive-level employees is called "Escape Velocity." Prior to the COVID-19 pandemic, Amazon held an Escape Velocity event every other month at its headquarters in Seattle, Washington from 2017 to 2019. The three-day event consisted of speaking engagements, trainings, and happy hours. Amazon provided catered meals for event participants. Participants not based in Seattle were permitted to expense travel and hotel stays to their team. When in-person trainings were stopped in March 2020 due to the pandemic, Amazon shifted the Escape Velocity program from an in-person event to a virtual one. Escape Velocity remained a virtual program until May 2022.

7.  Generally, Amazon employees were authorized to use their Amazon Travel Card ("T-Card") to pay for business travel expenses and their Amazon Purchasing Card ("P-Card") for non-travel expenses. Employees were also authorized to use their personal credit card and receive reimbursement. Charges made on the P-Card are paid directly by Amazon, eliminating the need for employees to use personal funds to cover costs for expenses and seek subsequent reimbursement. Whether an employee uses their T-Card, P-Card, or personal form of payment, employees are

---

[1] Information provided by Amazon concerning their internal operations and organization.

required to submit an expense report to Amazon explaining the reason for the expense and they may also be asked to provide receipts or proof of payment.

Tiffany Vo Background[2]

8.  Between May 2017 and December 2020, Tiffany Vo ("Vo") was employed by Amazon as an Executive Development Program Manager on the Global Learning and Development team.  In December 2020, Vo was promoted to Senior Program Manager.  Initially, Vo was based in Seattle, Washington at Amazon's headquarters. However, she started working remotely from Denver, Colorado in 2020 and was using Denver, CO addresses on her Amazon Earning Statements from September 2020 (possibly earlier) until she was terminated in June 2022, after admitting to the fraud to Amazon.

9.  As an Executive Development Senior Program Manager, Vo was responsible for administering the Escape Velocity program and the Amazon Business Writing (ABW) program. Specifically, Vo organized the speakers, content, and timeline for these events, arranged catering and happy hours, and purchased "swag" (e.g., badge reels, stickers, phone chargers, and branded clothing) for participants. As part of Vo's regular job responsibilities, she was authorized to pay and seek reimbursement for expenses associated with organizing each event. Escape Velocity and ABW shifted to virtual environments with the onset of the pandemic, and Vo was responsible for organizing these virtual events.

---

[2] Information provided by Amazon related to former Amazon employee Tiffany Vo.

## Overview of Investigation

10. Between March 2021 and May 2022, Vo submitted numerous fictitious or manipulated receipts for catering, restaurants, and UberEats gift cards for the Escape Velocity and Amazon Business Writing programs.

11. Between March 2021 and April 2022, Vo fraudulently sought and obtained approximately $350,408.59 in reimbursements for expenses she attributed to the Escape Velocity and Amazon Business Writing programs purchased allegedly on her personal credit card.

### *Catering Events: Gourmondo Cafes & Catering*

12. According to Amazon, between 2018 and March 2020, Vo arranged catering for the Escape Velocity program through Gourmondo Cafes & Catering ("Gourmondo"), a Seattle-based caterer. Amazon stated that the average catering expense for these events was $2,122.75. Amazon also stated that Vo used her P-Card to pay for all catering expenses between 2018 and March 2020. Amazon verified that these expenses were legitimate.

13. Between May 2020 and April 2022, when Escape Velocity was held virtually, Amazon stated that they did not provide catered meals for participants. Furthermore, Amazon stated that their records indicated that Amazon did not hire Gourmondo to provide any catering services for Amazon's Escape Velocity events between March 2020 and May 2022.

14. However, Vo submitted and received reimbursement for $243,027.71 in Gourmondo catering expenses that were allegedly associated with Escape Velocity or ABW events held between March 2021 and April 2022. Based on Vo's expense reports,

5

the average catering expense submitted during this period was $7,653.07, which was over three times the average catering expense between 2018 and March 2020.

15. On the expense reports Vo submitted, Vo requested reimbursement for using a personal form of payment to pay for these catering expenses rather than her P-Card. Vo's main justifications for using her personal credit card were that the expense exceeded her P-Card's daily limit and that Gourmondo did not accept her P-Card, which was a Visa credit card. However, on the majority of Gourmondo invoices Vo submitted to support her expense reports, the invoices showed a Visa credit card was used for payment.

16. The FBI contacted Gourmondo to obtain records related to catering services or other services provided to Amazon that were made by Vo from September 1, 2020, to June 30, 2022.  Gourmondo stated there were no records of sales orders or catered events during that time period.

*Happy Hours: 2120 Restaurant*

17. Amazon stated that they did not host any in-person happy hour events for Escape Velocity participants at 2120 Restaurant between March 2020 and May 2022.

18. However, Vo submitted and received reimbursement for $55,930.88 in happy hour expenses allegedly incurred at 2120 Restaurant in Seattle that were associated with Escape Velocity and Amazon Business Writing events held between March 2021 and November 2021.

19. The FBI contacted 2120 Restaurant to obtain records related to happy hours or other services provided to Amazon that were made by Vo from September 1, 2020, to June 30, 2022.  2120 Restaurant was unable to locate any records related to

the $55,930.88 in happy hour expenses Vo submitted to Amazon for events held between March 2021 and November 2021.

*UberEats Gift Cards*

20.   Between August 2021 and October 2021, Vo submitted $51,900.00 in expenses for UberEats gift cards that she allegedly purchased on Amazon.com.  On Vo's expense reports, she claimed that these purchases were for lunch vouchers / gift cards for participants of the Escape Velocity program.

21.   Vo's Amazon account purchase history showed that on August 10, 2021, Vo purchased $450 in Uber gift cards. According to Amazon, these were UberEats gift cards and some of them were sent to Escape Velocity participants. However, Vo sought a cash reimbursement of $1,050.00 for the purchase, overstating the expense by $600 and submitting an altered receipt to support the higher amount.

22.   Since Vo purchased these gift cards on Amazon.com, Amazon searched their internal records of the Order Number indicated on the receipt and confirmed that the total purchase amount for these gift cards was only $450.00.

23.   In addition, from August 2021 to October 2021, Vo submitted eleven additional reimbursements, totaling $50,850.00, for UberEats gift cards allegedly purchased on her personal credit card that she claimed were purchased for Escape Velocity events.  Amazon stated that they did not find any other records of Vo sending lunch vouchers to Escape Velocity participants. The receipts submitted with Vo's expense reports showed that the purchases were all made through Amazon.com. However, Vo's Amazon account purchase history did not show corresponding purchases. Additionally, the justification on multiple expense reports for the UberEats

gift card purchases for using her personal credit card instead of her P-card was that the vendor (Amazon) did not accept her Amazon P-card. In total, Vo received $51,450.00 related to unsubstantiated UberEats gift card purchases for Escape Velocity participants.

24. On June 6, 2022, members of Amazon's Business Conduct & Ethics team, Travel and Expense Reimbursement Audit team, and Human Resources team participated in an interview of Vo, in which she was asked about the inaccuracies and inconsistencies in her expense submissions. Vo initially denied the allegations and claimed the expenses were legitimate.

25. However, upon being shown the evidence, Vo eventually admitted to submitting fictitious and fraudulent expenses to collect cash reimbursement for expenses that were not made. Vo was subsequently terminated.

## FINANCIAL INVESTIGATION

*Facilitating Account BECU Vo #1355*

26. Boeing Employees' Credit Union ("BECU") account #3577401355 in the name of Tiffany L. Vo ("BECU Vo #1355") was opened on or around February 9, 2007, with Tiffany Vo as the sole signor.

27. From March 2021 to June 2022, BECU Vo #1355 received $350,408.49 of fraudulent expense reimbursement payments from Amazon described above and broken out by vendor as follows:

| Vendor | Amount |
|---|---|
| Gourmondo | $243,027.71 |
| 2120 Restaurant | $55,930.88 |
| UberEats | $51,450.00 |
|  | **$350,408.49** |

28. During the same time period, BECU Vo #1355 received payroll deposits from Amazon totaling $108,887.80, other deposits totaling $37,384.84, and additional Amazon expense reimbursements totaling $13,272.12.

29. Therefore, approximately 69% of all deposits to BECU Vo #1355 from March 2021 to June 2022 were fraud proceeds.

30. From March 2021 to June 2022, BECU Vo #1355 had total net transfers to other Vo BECU accounts of $85,087.00 ($77,900.00 to BECU Vo #2498 and $7,187.00 to BECU Vo #5091) and expenditures of $410,254.68 broken out by category as follows:

| Category | Amount |
| --- | --- |
| HOUSING | $(80,623.48) |
| LUXURY RETAILER | $(61,928.84) |
| FURNITURE/HOME IMPROVEMENT | $(57,677.67) |
| GROCERY/RETAIL | $(41,307.90) |
| OTHER EXPENSES | $(37,811.88) |
| TRAVEL | $(37,793.41) |
| AUTO RELATED | $(25,406.59) |
| DIGITAL/MOBILE PAYMENTS | $(23,842.97) |
| PERSONAL CARE | $(21,694.26) |
| RESTAURANTS/DINING | $(17,476.56) |
| EXTERNAL ACCOUNT(S) | $(3,545.66) |
| ATM WITHDRAWALS | $(1,145.46) |
|  | **$(410,254.68)** |

**2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317**

31. On or around January 29, 2022, Vo purchased the 2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317 from Land Rover Denver in the amount of $56,578.27, which included fees, taxes, and discounts.

32. On or around January 20, 2022, BECU Vo #1355 received a reimbursement payment from Amazon in the amount of $14,350.65 for two fraudulent

9

invoices from Gourmondo.  Subsequently on or around January 29, 2022, a payment in the amount of $10,000.00 was withdrawn from BECU Vo #1355 to Land Rover Denver as a down payment for the purchase of the 2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317.

33. Vo financed the remaining $46,578.27 with JP Morgan Chase.

34. Also, on or around January 31, 2022, BECU Vo #1355 received a reimbursement payment from Amazon in the amount of $6,870.32 for a fraudulent invoice from Gourmondo.  Subsequently, four payments in the amount of $755.86, totaling $3,023.44, were made from on or around March 17, 2022, to on or around June 16, 2022, to JP Morgan Chase from BECU Vo #1355.

35. In light of the above, there is probable cause to believe that payments made for the purchase of the 2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317 constitute funds traceable to wire fraud in violation of 18 U.S.C. § 1343, and the Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317 is property involved in money laundering in violation of 18 U.S.C. § 1957.

**Luxury Items Purchased from Neiman Marcus**

36. As detailed below, BECU Vo #1355 received three reimbursement payments from Amazon totaling $34,749.52 for fraudulent invoices from Gourmondo in early 2022.  These funds, also detailed below, were used to pay for luxury items from Neiman Marcus totaling $25,619.05.

| Amazon Pmt Date | Amazon Pmt Amt | Neiman Marcus Pmt Date | Neiman Marcus Pmt Amt* | Neiman Marcus Item |
|---|---|---|---|---|
| 1/7/2022 | $5,570.33 | 1/12/2022 | $2,823.36 | (1) Item #HBPF8, Gold Crystal Drip Floor Lamp ($2,365.00) |
| 3/22/2022 | $14,546.32 | 3/24/2022 | $1,028.25 | (1) Yves Saint Laurent Black Puffer Small Pouch Agneau Plume Matela Shoulder Bag ($945.00) |
|  |  | 3/25/2022 | $1,175.15 | (1) Chanel Blackgrey Shield Sunglasses ($600.00)<br>(2) Chanel White CC Rivera Cat Eye Sunglasses ($480.00) |
|  |  | 3/26/2022 | $9,575.28 | (1) Chanel Black Timeless Classic Medium Flapbag Caviar ($8,800.00) |
| 3/30/2022 | $14,632.87 | 3/31/2022 | $11,017.01 | (1) Chanel Beige Clair Timeless Classic Cardholder Caviar ($425.00)<br>(2) Chanel White Vanity Case Shoulder Bag ($5,200.00)<br>(3) Chanel Black Bucket Bag ($4,500.00) |
|  | $34,749.52 |  | $25,619.05 |  |

*amounts include shipping and/or tax*

37.   In light of the above, there is probable cause to believe that payments made for the purchases of luxury items from Neiman Marcus constitute funds traceable to wire fraud in violation of 18 U.S.C. § 1343.

## **CONCLUSION**

38.   Based on the foregoing facts and my training and experience, there is probable cause to believe that the 2020 Land Rover and luxury items purchased from Neiman Marcus, constitute, or were derived from proceeds traceable to violation 18 U.S.C. § 1343.

39.   Title 18, United States Code, § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice," shall be guilty of a federal offense.  As described above, there is probable cause to believe that all funds

11

contained in the Subject Accounts further described in Attachment A are proceeds of violations of 18 U.S.C. § 1343 (wire fraud), among other federal offenses.

40. Title 18, United States Code, § 1957 provides that "[whoever] . . . knowingly engages or attempts to engage in a money transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity," shall be guilty of a federal offense.

41. Title 18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of any property that constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 and, by and through 18 U.S.C. § 1956(c)(7), defining "specified unlawful activity."

42. Title 18 U.S.C. § 981(a)(1)(A) provides for the civil forfeiture of any property involved in violation of 18 U.S.C. § 1957.

43. Pursuant to 18 U.S.C. § 981(b)(1), "any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General . . ."

44. There is also probable cause to believe that the 2020 Land Rover and luxury items were derived from proceeds traceable to violations of 18 U.S.C. § 1957.

45. There is also probable cause to believe that the 2020 Land Rover was property involved in a money laundering offense in violation of 18 U.S.C. § 1343.

46. Therefore, the 2020 Land Rover and luxury items are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), and seizure pursuant to 18 U.S.C. § 981(b).

47. Accordingly, your Affiant seeks seizure warrants for:

    a. 2020 Land Rover - Range Rover Evoque VIN: SALZP2FX2LH046317

b. Item #HBPF8, Gold Crystal Drip Floor Lamp

c. Yves Saint Laurent Black Puffer Small Pouch Agneau Plume Matela Shoulder Bag

d. Chanel Blackgrey Shield Sunglasses

e. Chanel White CC Rivera Cat Eye Sunglasses

f. Chanel Black Timeless Classic Medium Flapbag Caviar

g. Chanel Beige Clair Timeless Classic Cardholder Caviar

h. Chanel White Vanity Case Shoulder Bag

i. Chanel Black Bucket Bag

I, Christine Norman, a Special Agent with the Federal Bureau of Investigation, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

*s/ Christine Norman*
Christine Norman
Special Agent FBI

Reviewed and submitted by Tonya Andrews, Assistant United States Attorney.

13